```
                    IN THE UNITED STATES DISTRICT COURT

                  FOR THE EASTERN DISTRICT OF CALIFORNIA


CARLOS PERFINO and JESS ZURANICH,  )
                                   )
          Plaintiffs,              )  2:09-cv-00833-GEB-KJM
                                   )
     v.                            )  ORDER GRANTING IN PART AND
                                   )  DENYING IN PART DEFENDANTS'
STEVE HARDY, DIRECTOR; ELIZABETH   )  MOTION TO DISMISS
GAVIA; LORI AJAX,                  )
                                   )
          Defendants.              )
                                   )
```

On October 28, 2009, State Defendants Steve Hardy, Elizabeth Gavia, and Lori Ajax (collectively "Defendants") filed a motion under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss with prejudice Plaintiffs' First Amended Complaint ("FAC"). The motion was heard on December 21, 2009. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I. FACTUAL AND LEGAL ALLEGATIONS

Plaintiffs Carlos Perfino ("Perfino") and Jess Zuranich ("Zuranich") allege the following federal claims against Defendants: Fifth Amendment takings claims, federal procedural and substantive due process claims and federal Equal Protection Clause claims. Plaintiffs allege the following claims under California law against Defendants: interference with contractual relations and intentional inducement of breach of contract, inverse condemnation and negligence. Plaintiffs also seek injunctive and declaratory relief based on federal and state law.

Plaintiffs' claims are premised on Defendants' use of Title 4, Section 62 of the California Code of Regulations ("Section 62") as their basis for denying Plaintiffs a liquor license. Plaintiffs

allege their federal and state rights were violated when Defendants prohibited them from owning a bar based on the conclusion that Section 62 precluded Perfino from being issued a liquor license because he was a correctional officer. Plaintiffs allege that Section 62 does not apply to correctional officers and that when Section 62 was used to deny Perfino a liquor license, Zuranich was also denied a liquor license because of Perfino's status as a correctional officer.

Plaintiffs sought a liquor license for a bar they desired to operate with two other men. Plaintiffs entered an "oral partnership agreement" with those men to own and operate a Latino-themed bar in January 2008 ("partners"). (FAC ¶¶ 12-14.) The partners formed a limited liability company, Linear Marketing Media Group LLC dba Playa Azul ("LLC"), to which one of the partners, Juan G. Ayala ("Ayala"), agreed to transfer a liquor license he had from a previously owned bar in exchange for a one fourth interest in the LLC. (Id. ¶¶ 14-16.) The partners, through the LLC, applied to the California Department of Alcoholic Beverage Company ("ABC") for the agreed-upon transfer and on April 1, 2008, the LLC received "a temporary ABC license." (Id. ¶¶ 17, 38.)

Plaintiffs allege difficulties concerning the temporary liquor license developed between them and Defendant Elizabeth Gavia ("Gavia") of the ABC around the opening night of the bar. Specifically, the temporary liquor license the LLC received did not authorize vendors to sell the bar liquor without clearance from the ABC and proof of clearance on the ABC's vendor database. Plaintiffs allege they informed Gavia of the bar "opening date via phone calls and e-mail," and Gavia responded that "it was going to be taken care of;" yet around March 28, 2008, Gavia refused to clear the bar for the

2

purchase of alcohol, which resulted in the bar having no alcohol to sell on opening night or the rest of that weekend. (Id. ¶ 32.) Plaintiffs allege "Gavia knowingly withheld the temporary permit." (Id.)

Further, around the time the liquor license was to be transferred to the LLC, Gavia informed the partners that all of their names had to be on the liquor license and that "the application had to be submitted to her specified escrow company . . . Capital City Escrow, Inc." (Id. ¶ 18.) On April 10, 2008, however, Gavia informed Perfino that his name could not be "on the liquor license, lease, or anything because Perfino was a correctional officer employed at California State Penitentiary[,] also known as Folsom State Prison," and therefore Section 62 prohibited him from being involved with the bar. (Id. ¶ 19.) Section 62 provides, in relevant part:

> ***No license authorized by the Alcoholic Beverage Control Act shall be held by, or issued or transferred to, any person holding office in, or employed by, any agency of the State of California or any of its political subdivisions when the duties of such person have to do with the enforcement of the Alcoholic Beverage Control Act or any other penal provisions of law of this State prohibiting or regulating the sale, use, possession or manufacture of alcoholic beverages.*** This rule is deemed to apply specifically, but without limiting its effect, to any persons employed in the Department of Justice of the State of California, in any district attorney's office, in any sheriff's office, in any local police department, or in the Department of Alcoholic Beverage Control. This rule shall not prohibit the ownership of any license interest by any local law enforcement officer or local reserve law enforcement officer where the licensed premises are located in a county other than that in which he is employed as a law enforcement officer.
>
> This rule shall apply to any person mentioned herein who has any ownership interest, directly or indirectly, in any business to be operated or conducted under an alcoholic beverage license.

1  CAL. Code Regs. tit. 4, § 62 (emphasis added).  Perfino told Gavia
2  that Section 62 did not apply to him because correctional officers "do
3  not have the power to make arrests once they are off duty and do not
4  have duties to enforce the ABC laws."  (Id. ¶ 20.)  Gavia then agreed
5  to "speak with her supervisor about the issue, and [returned] three or
6  four minutes later."  (Id. ¶ 22.)  Gavia remained adamant that Perfino
7  could not be on the liquor license application and "told [Zuranich]
8  that he needed to sign a document that would remove [Perfino's] name
9  from the application."  (Id.)

10      Further, Plaintiffs allege "[d]uring approximately April 10,
11 2008[,] [to] May 16, 2008," Gavia "coached" Ayala to "get the other
12 partners off the license, off the lease, off the insurance, and out of
13 the partnership[] so that [Ayala] would be the only owner/holder of
14 the ABC license."  (Id. ¶ 23.)  Gavia also informed Ayala that "if
15 within one week, by April 18, 2008, the license/lease and insurance
16 [was] not in [Ayala's] name alone, she would arrest Ayala and Perfino.
17 (Id. ¶ 24.)

18      "Plaintiffs attempted to correct the situation" by speaking
19 with Lori Ajax ("Ajax") of the ABC, who was recommended to Plaintiffs
20 by someone "who worked in the legal department of the ABC."  (Id. ¶
21 25).  On or around May 16, 2008, Ajax "advised Zuranich that everyone
22 could be on the license and the lease, and [Perfino] was okay to be on
23 the license and buy the liquor."  (Id.)  On June 2, 2008, the ABC
24 public website listed the partners as temporary licensees, yet a day
25 later, the partners were no longer listed as temporary licensees on
26 the ABC website. (Id. ¶ 35).

27      Perfino wrote Ajax on July 3, 2008, notifying her of the
28 situation and requesting that their names be added to the liquor

4

license.  However, "Plaintiffs believe that . . . Ajax is the person that caused [the partners] to be dropped as licensees." (Id. ¶¶ 34, 36.)  Plaintiffs allege the partnership between Ayala and Plaintiffs dissolved and Ayala changed the locks on the bar in July 2008.  (Id. ¶ 31.)

Plaintiffs allege that Gavia denied them a permanent liquor license to prevent Plaintiffs from competing for customers with her friend who owned a similarly-themed Mexican bar close to the location where Plaintiffs' bar was located.  (Id. ¶ 27.) Further, Plaintiffs allege that Gavia, with full knowledge of their partnership, "improperly, wrongfully, and illegally interfered with the partnership agreement, as follows":

> advising [Ayala] on how to remove [Perfino] and [Zuranich] from the license application, from the lease and insurance, and partnership . . . [and] to breach [Ayala's] partnership agreement with [Plaintiffs]. . .

(Id. ¶¶ 28, 29.)  Plaintiffs allege [o]nce you obtain a temporary permit, the applicant is on his way to obtaining a permanent permit." (Id. ¶ 44.)  Plaintiffs also name four correctional officers with ABC alcohol licenses as support for their allegations that denial of their application for a permanent liquor license was unlawful.  (Id. ¶ 49.)

## II. LEGAL STANDARDS

When deciding a motion to dismiss, the Court accepts "all material allegations in the complaint as true and contrue[s] them in light most favorable to [Plaintiffs]".  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.

5

Twombly, 550 U.S. 544, 570 (2007)).  Dismissal is appropriate, however, where the plaintiff fails to state a claim supportable by a cognizable legal theory.  Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS

**A.  Federal Constitutional Claims**

Defendants seek dismissal of Plaintiffs' federal claims alleged under the Taking Clause of the Fifth Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment.  Defendants also argue Plaintiff Zuranich lacks standing to maintain these claims.

Plaintiffs' procedural due process claims must be based on a recognized property interest.  "Property interests are not created by the Constitution, but 'by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) (citing and quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  "Under California law, a liquor license **issued** pursuant to the Alcoholic Beverage Control act is a valuable property right."  Dash, Inc. v. Alcoholic Beverage Control Appeals Bd., 683 F.2d 1229, 1233 (9th Cir. 1981) (referencing Etchart v. Pyles, 106 Cal. App. 2d 549 (1951)) (emphasis added).  However, "[i]t is well settled that the **right** to possess, make or deal in intoxicating liquor is not a privilege, nor such a property right that state legislation prohibiting, restricting, or regulating its manufacture, use, possession, distribution, or sale violates the Fourteenth Amendment of the Constitution."  Tokaji v. State Bd. of Equalization, 20 Cal. App.

1  2d 612, 614 (1937) (emphasis added); accord Yu v. Alcoholic Bev. etc.
2  Appeals Bd., 3 Cal. App. 4th 286, 296 (1992) (citing Tokaji and
3  stating "the very earliest decisions interpreting the [California]
4  Alcoholic Beverage Control Act . . . [have all] held that 'there is no
5  inherent right to sell intoxicating liquors . . . .'")  California
6  "courts view[] a liquor license as different from a license to conduct
7  any other business, and believe[] that a license to sell liquor is not
8  a proprietary right within the meaning of the due process clause of
9  the Constitution, nor is it a contract; it is but a permit to do what
10 would otherwise be unlawful . . . " Yu, 3 Cal. App. 4th at 296.
11         Further, under California law "the mere application for a
12 [permanent liquor license] . . . confers no vested property interest
13 in the applicant." Contra Costa Theatre, Inc. v. City of Concord, 511
14 F. Supp. 87, 90 (N.D. Cal. 1980), aff'd 686 F.2d 798 (9th Cir. 1982),
15 cert. denied, 460 U.S. 1085 (1983)(discussing application for use
16 permit); cf. Shamie v. City of Pontiac, 620 F.2d 118, 120 (6th Cir.
17 1980) (holding that a first time liquor license applicant is not
18 entitled to procedural due process rights under Michigan law); Lewis
19 v. City of Grand Rapids, 356 F.2d 276, 286-87 (6th Cir. 1966) (finding
20 Plaintiff "did not own a license to operate a liquor establishment,
21 and the opportunity to seek approval to become an owner was not, in
22 [the Court's] view, a property right").
23         Only "where regulations establishing entitlement to the
24 benefit are . . . mandatory in nature" may licensing "applicants . . .
25 have a property interest protectable under the Due Process Clause."
26 Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir.
27 1998).  Here, the FAC shows Plaintiffs' temporary liquor license was
28 effective April 1, 2008, to July 31, 2008.  The statute under which

Plaintiffs' temporary liquor license was issued states, in relevant part:

> The department ***in its discretion*** may issue a temporary permit [for a period not to exceed four calendar months] to the transferee of any license to continue the operation of the premises during the period a transfer application for the license from person to person at the same premises is pending and when [certain conditions are met].

CAL. BUS. & PROF. CODE § 24045.5 (emphasis added) ("Section 24045.5"). This statute further states:

> Refusal by the department to issue or extend a temporary permit shall not entitle the applicant to petition for the permit pursuant to Section 24011, or to a hearing pursuant to Section 24012.
>
> . . . .
>
> Notwithstanding any other provision of law, a temporary permit may be canceled or suspended summarily at anytime if the department determines that good cause for the cancellation or suspension exists.

Id.

Section 24045.5 does not create a procedural property interest in obtaining a permanent liquor license. Here, Section 24011 authorizes the department to refuse to extend a temporary liquor license without a hearing. Therefore, Plaintiffs do not have a constitutionally protected property interest in extending the effective period of their temporary liquor license and had no property right in the issuance of a permanent liquor license.

Therefore, Plaintiffs' federal procedural due process claims based on the existence of a property interest fail since Plaintiffs had no constitutionally cognizable property interest in a permanent liquor license they did not hold. Nor did Plaintiffs have a constitutionally cognizable property interest in any profit Plaintiffs

hoped to earn while doing business as a club with a permanent liquor license. Cf. Patel v. City of Sauk Centre, 631 F.Supp.2d 1139, 1146-48 (D. Minn. Aug. 3, 2007) (stating unsuccessful applicant for liquor license had no procedural or "substantive" due-process claims because Minnesota law did not confer any "right" to such a license).

Further, Plaintiffs' allegation that their substantive due process rights were violated "seem[s] to assume that there is a general liberty interest to be free of arbitrary and capricious government action;" however, there is no such general right. Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 948-49 (9th Cir. 2004)(referencing Nunez v. City of Los Angeles, 147 F.3d. 867, 873 (9th cir. 1998)). The Ninth Circuit has held "that claims alleging governmental interference with property rights fall under the Fifth Amendment's Takings Clause." Madison v. Graham, 316 F.3d 867, 870 (9th Cir. 2002) (referencing Armendariz v. Penman, 75 F.3d 1311, 1324 (9th Cir.1996) (en banc)). The Ninth Circuit explained this is "because the Takings Clause provides an explicit textual source of constitutional protection against private takings, [therefore,] the Fifth Amendment (as incorporated by the Fourteenth), not the more generalized notion of substantive due process, must be the guide in reviewing the plaintiffs' claim of a private taking." Id. (internal quotations omitted). Since this precedent forbids Plaintiffs from transforming their economic and property right taking claims into substantive due process claims, Plaintiffs fail to state viable substantive due process claims, and those claims are dismissed.

Plaintiffs have also failed to allege a viable Fifth Amendment takings claim. Identification of "a property interest cognizable under the Fifth Amendment . . . [is] a 'bedrock

1  requirement' of any successful takings challenge." Tex. State Bank v.
2  United States, 423 F.3d 1370, 1378 (Fed. Cir. 2005); accord C & E
3  Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 200
4  (D.C. Cir. 2002).  "Because the Constitution protects rather than
5  creates property interests, the existence of a property interest is
6  determined by reference to 'existing rules or understandings that stem
7  from an independent source such as state law.' " Phillips v. Wash.
8  Legal Found., 524 U.S. 156, 164 (1998) (quoting Roth, 408 U.S. at
9  577).  Plaintiffs have not identified in their FAC a property interest
10 cognizable under the Fifth Amendment.  Therefore, Plaintiffs' federal
11 takings claims are dismissed.

12        Defendants also seek dismissal of Plaintiffs' equal
13 protection claims, arguing Perfino fails to state an equal protection
14 claim, and since Zuranich "is not a correctional officer" and was not
15 denied a liquor license on that basis, Zuranich has no standing to
16 contest the denial of a liquor license to Perfino based on Perfino's
17 status as a correctional officer. (Mot. 3:6-7.)  Plaintiffs allege in
18 the FAC that Defendants violated their equal protection rights when
19 Defendants "wrongfully" prevented Perfino "from owning a bar . . . in
20 an arbitrary, irrational, and capricious manner . . ."  (FAC ¶ 60.)
21 Zuranich argues that even though he is "a non-correctional officer[,]
22 . . . he was damaged in fact by the [D]efendants' violation of the
23 equal protection rights of Perfino" when they used Perfino's status as
24 a correctional officer to deny Perfino a liquor license. (Opp'n 7:10-
25 13.)  However, Zuranich "cannot rest his claim to relief on the legal
26 rights or interest of [Perfino]." Wedges/Ledges of Cal. Inc. v. City
27 of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994) (internal citation
28

omitted). Therefore, Zuranich lacks standing to maintain an equal protection claim, and this claim is dismissed.

Perfino alleges that "[D]efendants' conduct in singling correctional officers from owning a bar, pursuant to [D]efendants' incorrect and uneven interpretation of . . . Section 62, constitutes violation of the Equal Protection Clause of the Fourteenth Amendment." (FAC ¶ 60; Opp'n 8:4-8.) Perfino also alleges the ABC has treated four correctional officers more favorably than he was treated since they have received liquor licenses. (Id. ¶ 49). Perfino alleges he was denied a liquor license because ABC employee Gavia did not want his bar to compete for business with her friend's bar, which was located in the same area. (Id. ¶¶ 27-29.) Perfino also infers in his allegations that Gavia used Perfino's status as a correctional officer as a pretext to deny him a liquor license. (Id.)

In Village of Willowbrook v. Olech, the Supreme Court stated an equal protection claim can be brought by a "'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000). Perfino alleges Defendants, on behalf of the ABC, denied him a liquor license "for reasons wholly unrelated to any legitimate state objective." Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995); See also N Group LLC v. Hawaii County Liquor Comm'n, Civ. No. 08-00516 ACK-KSC, --- F. Supp. 2d ----, 2009 WL 5437851, at *17 (D. Hawaii Mar. 3, 2009) (finding Plaintiff adequately alleged a "class of one" Equal Protection claim even when Plaintiff only alleged "'other liquor licensees'" were treated differently and not that other licensees were "similarly situated to Plaintiff" since "there [was a] reasonable

inference that they were"). Perfino's equal protection claim sufficiently alleges that Defendants treated him differently than similarly situated individuals and that there is no rational basis for the difference in treatment. Therefore, Defendants' motion to dismiss this claim is denied.

**B.  Equitable Relief and Official Capacity Claims**

Defendants also seek dismissal of the official capacity and equitable relief claims in the FAC. These claims, however, have been mooted by the position Defendants expressed in a filing in response to an order issued after the hearing on the motion to dismiss, and after Plaintiffs filed a motion to compel Defendants to clarify their position as to whether or not it is ABC's official policy to deny correctional officers liquor licenses under Section 62. Although Defendants previously argued that Section 62 applies to correctional officers, Defendants' response to the order states: "While on the face Section 62 applies to law enforcement personnel, which would include correctional officers, the current position of [the] ABC regarding [Section 62] is that correctional officers are exempt from this section." (See Docket No. 49, Defs' Response 2:6-9). This response moots the official capacity and equitable relief claims in the FAC Therefore, these claims are dismissed.

**C. Plaintiffs' Inverse Condemnation Claims**

Defendants also seek dismissal of Plaintiffs' inverse condemnation claims, arguing there has been no taking of private property for "public use or public intent." (Mot. 13:5-12.) Plaintiffs counter that their property rights were taken from them "for the public purpose of enforcing Section 62 of the California Code of regulations . . . ." (Opp'n 21:1.)

> Inverse condemnation is a procedural device for insuring that the constitutional proscription that private property shall not be taken or damaged for public use without just compensation having first been made to the owner is not violated. It is the name generally ascribed to the remedy which a property owner is permitted to prosecute to obtain the just compensation which the Constitution assures him when his property without prior payment therefor, has been taken ***or damaged for public use***.

Fresno Police Officers Assn. v. State of California, 190 Cal.App.3d 413, 416-17 (1987)(internal citation and quotations omitted)(emphasis added). Plaintiffs fail to allege they had a property interest that was taken or damaged for public use. Further, because of "various policy considerations . . . [,] inverse condemnation is an inappropriate and undesirable remedy in cases in which unconstitutional regulation is alleged," such as in this case with regard to Section 62. Agins v. City of Tiburon, 24 Cal.3d 266, 275 (1979) overruled on other grounds in First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304, 319 (1987) and Air Quality Products, Inc. v. State of California, 96 Cal.App.3d 340 (1979). Therefore, these claims are dismissed.

**D. Plaintiffs' Interference with Contractual Relations and Intentional Inducement of Breach of Contract and Negligence Claims**

Defendants also seek dismissal of Plaintiffs' interference with contractual relations and intentional inducement of breach of contract and negligence claims. Defendants argue these claims are prohibited by California Government Code Sections 820.2 ("Section 820.2") and 821.2 ("Section 821.2") since these statutes bar "any liability arising out of [Gavia, Ajax, or Hardy's discretionary] decision to deny Plaintiffs' application for liquor license." (Mot. 10:26-11:2; 14:7-26.) Perfino counters that Defendants' decisions were

"not discretionary decisions about a license.  Instead they were improper actions to induce a person to breach a contract."  (Opp'n 19:7-8.)  Perfino also argues that with regard to the negligence claim that it "is not about a licensing decision, but is instead about the [D]efendants' conduct in negligently interpreting Section 62 . . . ."  (Opp'n 21:12-14.)  Defendants rejoin that because Plaintiffs allege "Defendant Gavia was working in her capacity as an employee of ABC and that her actions arose out of job duties of determining whether Plaintiffs should be issued a liquor license," the claim for interference with the contractual relations against Gavia is barred.  (Rely 6:6-10).

Section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  CAL. GOV'T CODE § 820.2.  Section 821.2 states:

> A public employee is not liable for an injury caused by his ***issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license,*** certificate, approval, order, or similar authorization ***where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.***

CAL. GOV'T CODE § 821.2 (emphasis added).  "The [ABC] enjoys broad discretion with regard to licensing decisions." Richards v. Dep't of Alcoholic Beverages Control, 139 Cal. App. 4th 304, 318 (2006) (referencing Cal. Const., art. XX, § 22; Martin v. Alcoholic Bev. etc. Appeals Bd. 52 Cal. 2d 238, 248 (1959), supersceded by amendments on other grounds, 1967 Amendments to the Act, Stats 1967, ch. (1525), as recognized in Dep't. of Alcoholic Beverage Control v. Superior Court

for Orange County, 268 Cal. App. 2d 67, 69 (1968)).  Thus, a public employee employed by the ABC, a public entity authorized by law to determine whether a license should be issued or denied, "is immune from liability for an injury caused by the suspension, revocation, issuance, or denial of a license," or an otherwise discretionary act. Richards, 139 Cal. App. 4th at 318-19 (internal citations omitted). Immunity is limited to discretionary activities. Id. at 318 (referencing Morris v. County of Marin, 18 Cal. 3d 901, 911-915, (1977), criticized on another point in Caldwell v. Montoya, 10 Cal. 4th 972, 987, n. 8 (1995).

In their interference with contractual relations and intentional inducement of breach of contract claims, Plaintiffs allege Gavia and Ajax:

> both knew full-well that [P]laintiffs had in place an agreement among bar owners to own and operate a bar, and that their conduct in advising one of the owners to delete them from ownership would necessarily interfere with [P]laintiffs['] contractual rights, and would further constitute an inducement by the [D]efendants to get the other owner to breach [its] contract with the [P]laintiffs.

(FAC ¶ 76.)  Plaintiffs' claim that Gavia and Ajax interfered with the contract is not barred by Section 820.2 and Section 821.2 since these acts are not within Gavia and Ajax's discretion as ABC employees. Therefore, this portion of Defendants' motion is denied.

Plaintiffs allege in their negligence claim that Defendants each owed Plaintiffs a duty of care, which they "breached . . . . by negligently . . . enforc[ing] Section 62."  (Id. ¶¶ 102-03.) Sections 820.2 and 821.2 bar each Defendant from being exposed to liability for acts based upon the exercise of their discretion to issue, deny, suspend, or revoke a license.  Since "negligently

interpreting" Section 62 is within this discretion, Plaintiffs' negligence claim is dismissed.

### IV. LEAVE TO AMEND

Defendants request that Plaintiffs not be given leave to amend. A district court may, in its discretion, deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Since Plaintiffs have been given leave to amend the claims dismissed in this order once before, and since Plaintiffs have not alleged facts showing they can cure the deficiencies discussed herein, the dismissal of Plaintiffs' claims is without leave to amend.

### V. CONCLUSION

The following claims in Plaintiffs' FAC are dismissed without leave to amend:

(1)  All of Zuranich's federal claims;

(2)  Perfino's substantive and procedural due process claims;

(3)  Perfino's Fifth Amendment takings claim;

(4)  All official capacity and equitable relief claims;

(5)  Plaintiffs' inverse condemnation claims;

(6)  Plaintiffs' negligence claims.

Dated: March 26, 2010

GARLAND E. BURRELL, JR.
United States District Judge