1

2

3                    IN  THE  UNITED  STATES  DISTRICT  COURT

4              FOR  THE  EASTERN  DISTRICT  OF  CALIFORNIA

5

6   CARLOS PERFINO AND JESS ZURANICH,  )
                                        )    2:09-cv-00833-GEB-KJM
7              Plaintiffs,              )
                                        )    ORDER GRANTING DEFENDANTS'
8        v.                             )    MOTION FOR SUMMARY JUDGMENT
                                        )    ON PLAINTIFF PERFINO'S
9   STEVE HARDY, DIRECTOR; ELIZABETH    )    FEDERAL CLAIM & DISMISSING
    GAVIA, LORI AJAX,                   )    PLAINTIFFS' REMAINING STATE
10                                      )    CLAIM UNDER 28 U.S.C. §
               Defendants.             )    1367(c)(3)[*]
11   _____)

12              On March 29, 2010, Defendants Steve Hardy, Elizabeth Gavia

13   and Lori Ajax ("Defendants") filed a motion for summary judgment on

14   Plaintiffs' claims alleged in their first amended complaint.  Later

15   that same day an order was filed which decided Defendants' prior

16   dismissal motion.  The next day, on March 30, 2010, Defendants' filed

17   an amended brief for their summary judgment motion in which they

18   clarified that they only seek summary judgment on Plaintiffs' two

19   claims that survived the March 29 dismissal order: Plaintiff Carlos

20   Perfino's ("Perfino") federal equal protection claim and Plaintiffs'

21   state claim for interference with contract.  Defendants' motion on the

22   remaining federal equal protection claim will be decided first.  The

23   crux of this claim is the allegation that Perfino was improperly

24   prevented from obtaining a liquor license and operating a bar because

25   of his status as a correctional officer.  For the reasons stated

26   _____

27        [*]   This matter is deemed to be suitable for decision without oral
     argument.  E.D. Cal. R. 230(g).

28

                                    1

below, Defendants' motion for summary judgment on Perfino's federal equal protection claim will be granted and Plaintiffs' remaining state claim will be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

## I.   LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  Celotex Corp. v. Catrett, 477 U.S., 317, 323 (1986).  If this burden is satisfied, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis in original).  This requires that the non-moving party "come forward with facts, and not allegations, [that] controvert the moving party's case."  Town House, Inc. v. Paulino, 381 F.2d 811, 814 (9th Cir. 1967) (citation omitted); see also Beard v. Banks, 548 U.S. 521, 527 (2006) (finding that a party opposing summary judgment who "fail[s] [to] specifically challenge the facts identified in the [moving party's] statement of undisputed facts . . . is deemed to have admitted the validity of [those] facts . . . .").  "Mere argument does not establish a genuine issue of material fact to defeat summary judgment."  MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993).

All reasonable inferences that can be drawn from the facts provided "must be drawn in favor of the non-moving party."  Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009).  However, only admissible evidence may be considered.  See Orr v. Bank of America, NT

& SA, 285 F.3d 764, 773 (9th Cir. 2002) (stating that "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment") (citations omitted); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988) (stating that "[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

## II.   STATEMENT OF UNCONTROVERTED FACTS

Plaintiffs' Responsive Separate Statement of Undisputed Facts ("SSUF") lists certain of Defendants' facts as "disputed"; however, Plaintiffs fail to provide admissible evidence that controverts Defendants' evidence. Further, Defendants have raised numerous evidentiary objections to Plaintiffs' declarations and exhibits. Those objections requiring decision are discussed below.

Plaintiffs Perfino and Zuranich were interested in opening a Latino-themed bar, and in January 2008, they met with Juan Ayala at a Starbucks to discuss purchasing his Alcoholic Beverage Control ("ABC") liquor license. (Pls.' SSUF ¶¶ 21-22.) Ayala had advertised the sale of his ABC liquor license on craigslist. (Id. ¶ 22.) At their meeting, Ayala told Plaintiffs that his ABC liquor license was not active. (Id. ¶ 25.) Ayala also told Plaintiffs that he did not want to sell his ABC license but would agree to open a bar with Plaintiffs using his license. (Id. ¶ 24.) That same day, Plaintiffs, Ayala and Rigoberto Galvez orally agreed to form a limited liability company to open a bar called Playa Azul in Sacramento, California. (Id. ¶¶ 26-27.)

Ayala filed a request with the State of California ABC on February 26, 2008 to reinstate his surrendered ABC liquor license, license No. 48-446084. (Id. ¶ 30.) Ayala had originally obtained his

ABC liquor license on March 20, 2007. (Id. ¶ 19.)  However, a month later, on April 18, 2007, Ayala surrendered the license. (Id. ¶ 20.) To reinstate a liquor license that has been surrendered for more than six months, an ABC licensing representative must conduct an investigation of the premises for which the license issued to ensure that tenancy exists and that the premises licensed have not been altered. (Id. ¶ 8.)  Ayala's liquor license was for the premises located at 5420 Auburn Boulevard in Sacramento("the premises"). (Id. ¶ 36.)

On March 10, 2008, Defendant Gavia, an ABC licensing representative, was assigned to investigate the premises for which Ayala had been issued a liquor license.  Gavia told Ayala on March 25, 2008 that all persons listed on the lease for the premises must be qualified to hold an ABC license and must appear on the application. (Id. ¶ 43.)  At that time, Ayala, Perfino, Zuranich and Galvez were named on the lease for the property at 5420/5430 Auburn Boulevard. (Id. ¶ 42.)  Gavia also advised Ayala that a "Person to Person" transfer application was required to add additional people to his liquor license and this application had to be submitted before the liquor license could be re-instated. (Id. ¶¶ 10, 44.)

Ayala, Perfino, Zuranich and Galvez formed the Linear Marketing Group Media LLC (the "LLC"), for which articles of incorporation were filed on March 27, 2008. (Id. ¶ 45.)  The LLC was formed for the purpose of operating a bar called Playa Azul at 5420/5430 Auburn Boulevard, in Sacramento, California. (Id. ¶¶ 45-46.)  That same day, Ayala submitted "an application for a Person to Person transfer" (the "application for transfer") to ABC "to add other persons to [his] license." (Id. ¶¶ 44, 47.)  Specifically, "Ayala

[sought to] . . . transfer . . . [his] ABC license to [the LLC]."
(Id. ¶ 47.)  The application for transfer listed Perfino's occupation
as a correctional officer.  (Id. ¶ 55.)

The next day, on March 28, 2008, Ayala's ABC license was
reinstated and the LLC was given a temporary permit to operate under
while ABC investigated Ayala's application for transfer, and the
members of the LLC to ensure they were qualified to hold a liquor
license.  (Id. ¶¶ 49, 51.)  A temporary permit is issued before an ABC
investigation of the prospective licensees is completed and is
separate and distinct from an approved on-sale general public premises
liquor license.  (Id. ¶¶ 53-54.)

While reviewing Ayala's application for transfer, Gavia was
informed by her supervisor that section 62 of the California Code of
Regulations ("section 62"), prescribes that correctional officers may
not be issued a liquor license.  (Id. ¶ 56.)  On April 10, 2008, Gavia
informed "Zuranich that Perfino did not qualify to hold an ABC liquor
license because of his status as a correctional officer."  (Id. ¶ 59.)

However, on May 8 or 9, 2008, before Gavia could complete
her investigation of the application for transfer, Ayala "notified"
Zuranich and Perfino that he "no longer wanted to be in business with
. . . Zuranich because Zuranich had failed to put money into the
business" and that "he wanted to withdraw the transfer application."
(Id. ¶¶ 60-61.)  "Before [Defendant] Gavia could finish her
investigation of the transfer application, the application was
withdrawn [by Ayala]."  (Id. ¶ 72.)

Plaintiffs argue that Ayala withdrew the application for
transfer since ABC officials informed Ayala that Perfino would not be
able to hold a liquor license because of his status as a correctional

officer.  Plaintiffs, however, have provided only inadmissible hearsay
statements in support of this argument to which Defendants object.
These objections are sustained.  Plaintiffs, therefore, have not
provided any admissible evidence that controverts Ayala's declaration
that he withdrew his application for transfer because he no longer
wanted to be in business with Zuranich.

On May 12, 2008, Ayala signed "ABC 209 form" to withdraw the
application for transfer, in which he listed "fall out weth [sic]
partner" as "the reason for withdrawal." (Id. ¶¶ 66, 67; Ayala Decl.
Ex. 7.)  A few days later, "[o]n May 16, 2008, [Defendant] Ajax sent
notice to [the LLC] . . . at 5420/5430 Auburn Blvd., Sacramento, CA
that . . . Ayala had withdrawn the application for transfer of [the]
liquor license and . . . within 10 days of the date of the letter the
application would be withdrawn and the temporary permit also
withdrawn." (Pls.' SSUF ¶ 71.)

Ayala withdrew his application for transfer of his liquor
license before Gavia made any recommendation to her supervisor as to
whether the transfer application should be approved or denied.  (Id.
¶¶ 15, 73.)  Ultimately, it is an ABC supervisor who determines
whether a transfer application will be approved or denied.  (Id. ¶
15.)  Therefore, no final decision on Ayala's application for transfer
of his liquor license was ever rendered.  (Id. ¶ 74.)

### III.  DEFENDANTS' REQUEST FOR SANCTIONS

Defendants filed a reply brief in which they include a
request that the Court impose sanctions upon Plaintiffs for submitting
affidavits in "bad faith." (Reply 7-21.)  Specifically, Defendants
argue Plaintiffs' affidavits improperly advocate in support of
previously dismissed claims, are filled with hearsay and statements

1  made without personal knowledge, and state improper legal conclusions.

2  (Id.)  Defendants, however, have not cited authority under which they

3  seek to have sanctions imposed.  Further, arguments raised for the

4  first time in a reply brief need not be considered.  See Zamani v.

5  Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (stating that "[t]he

6  district court need not consider arguments raised for the first time

7  in a reply brief.")  Therefore, Defendants' request for sanctions is

8  denied.

9  **IV.  DISCUSSION**

10  **A.  Federal Equal Protection Claim**

11  Defendants argue they are entitled to summary judgment on

12  Perfino's equal protection claim since "there was no decision to deny

13  [him] a liquor license," and therefore, "Perfino cannot establish

14  [that] a denial of a liquor license was based on an incorrect

15  interpretation of Tile 4 California Code of Regulations section 62."

16  (Am. P. & A. in Supp. of Mot. for Summ. J. 11:17-23.)  Perfino

17  responds, arguing that he "has established each element of his claim"

18  and "[t]he fact that Juan Ayala later terminated the application

19  doesn't change the fact that the constitutional tort had already been

20  committed."  (Mem. of P. & A. in Opp'n 8-14.)  Perfino further argues

21  that once Defendant Gavia told Zuranich that Perfino did not qualify

22  for an ABC license because of his status as a correctional officer,

23  the Defendants "completed the wrongdoing . . . [of] denying [him] the

24  equal protections of law."  (Id. 4:21-24.)

25  Perfino's complaint alleges a "class of one" equal

26  protection claim.  Specifically, Perfino alleges Defendants have

27  "wrongfully instituted . . . an extension of an ABC regulation

28  prohibiting ownership of a bar by a police officer to prohibit

[Perfino,] a correctional officer[,] from owning a bar." (First Am. Compl. ¶ 56.)  Perfino also alleges Defendants are applying section 62 "improper[ly]" and "uneven[ly]" since "sometimes [ABC] officials determine that Section 62 applies to bar correctional officers from having an [ABC] license, and sometimes [they determine that Section 62 is not a bar]." (Id.  ¶ 62.)  Perfino further alleges that Gavia "had the unlawful and improper intent to help her friend's bar by not allowing Playa Azul's application . . . to go forward." (Id. ¶ 27.) Perfino also alleges ABC issued liquor licenses to four other correctional officers.  (Id. ¶ 49.)

Defendants argue that "Perfino cannot establish a violation under the Equal Protection Clause [because] no decision to deny an application or license was made." (Am. P. & A. in Supp. of Mot. for Summ. J. 11:25-26.)  The essence of this argument is that Ayala's withdrawal of the application to transfer the liquor license caused Perfino's injury rather than Defendants' actions.

In the equal protection context, an individual challenging a government official's allegedly unequal treatment "need not allege that he would have obtained [a government] benefit but for" the government's treatment.  Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 666 (1993) However, an equal protection plaintiff must "*demonstrate that [he is] ready and able to apply for . . . [the government benefit]* and that the [government official's treatment] threatens to prevent [him] from applying on an equal basis with other[s] in his group." Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 657 (9th Cir. 2002) (emphasis added).

In this case, Perfino's ability to acquire the liquor license at issue was dependent upon Ayala's cooperation and willingness to transfer the liquor license to the LLC.  During the pendency of Ayala's application for transfer of the liquor license to the LCC, the liquor license belonged to Ayala.  When Ayala decided to withdraw the application, it extinguished Perfino's ability to acquire that specific liquor license.  Therefore, it was Ayala's withdrawal of his application that prevented Perfino from being "ready and able to apply" for the liquor license at issue, not the Defendants' alleged arbitrary treatment of Perfino.  <u>Id.</u>  Since Ayala's withdrawal of his transfer application prevented Perfino from being ready and able to apply for the liquor license issued for the premises, any equal protection claim Perfino alleges based on Defendants' interpretation and application of Section 62 fails.

Perfino's class of one equal protection claim also fails because it is unsupported in the summary judgment record.  "When an equal protection claim is premised on unique treatment rather than on a classification, [it is] . . . described . . . as a 'class of one' claim."  <u>N. Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008) (quoting <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)).  "[T]he plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom [he] shares characteristics, but rather that the defendants simply harbor animus against [him] *in particular* and therefore treated [him] arbitrarily."  <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008) (citing <u>N. Pacifica</u>, 526 F.3d at 486) (emphasis in original).  To succeed on a "class of one" claim, "the plaintiff must establish that the [Defendants] intentionally, and without rational basis, treated

the plaintiff differently from others similarly situated." Id.
(citations omitted).  Further, "[a] class of one plaintiff must show
that the discriminatory treatment was intentionally directed just at
him, as opposed to being an accident or a random act." Id. (quoting
Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001)).

        Perfino alleges in his complaint that ABC issued liquor
licenses to other correctional officers.  However, this allegation is
unsupported by facts in the summary judgment record; no evidence has
been submitted showing that another correctional officer was issued an
ABC liquor license.  Perfino, therefore, has provided "no evidence
that [he] [was] treated differently than any other [correctional
officer]." Aida Food and Liquor, Inc. v. City of Chicago, 439 F.3d
397, 403 (7th Cir. 2006); see also Morris v. State Bar of California,
No. CV F 09-0026 LJO GSA, 2010 WL 2353528, at *8 (E.D. Cal. Jun. 9,
2010) (rejecting class of one equal protection claim where plaintiff
introduced "[n]o evidence . . . to support similarity in circumstances
[or] any difference in treatment").  Therefore, Defendants' motion for
summary judgment on Perfino's federal equal protection claim is
granted.

**B.  Supplemental Jurisdiction Over Plaintiffs' Remaining State Claim**

        Since only Plaintiffs' state claim for interference with
contract remains, the court may consider whether to continue
exercising supplemental jurisdiction over this claim. See Acri v.
Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc)
(suggesting that a district court may, but need not, sua sponte decide
whether to continue exercising supplemental jurisdiction under 28
U.S.C. § 1367(c)(3) after all federal law claims have been dismissed).

Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state law] claim" when "all claims over which it has original jurisdiction" have been dismissed.  "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the . . . values of economy, convenience, fairness, and comity."  Acri, 114 F.3d at 1001 (quotations omitted).  "In the usual case in which all federal-law claims are eliminated before trial, the balance of [the] factors to be considered . . . point toward declining to exercise jurisdiction over the remaining state-law claims."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  "Further, primary responsibility for developing and applying state law rests with the state courts." Curiel v. Barclays Capital Real Estate Inc., No. S-09-3074 FCD/KJM, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010); see also Gibbs, 282 U.S. at 726 (stating that "[n]eedless decisions of state law should be avoided").

Here, judicial economy is not promoted by continuing to exercise supplemental jurisdiction over Plaintiffs' state claim since the required further investment of federal judicial energy to preside over the remaining claim does not justify retention of jurisdiction. See Otto v. Heckler, 802 F.2d 337, 338 (9th Cir. Cir. 1986) (stating that "[t]he district court, of course, has the discretion to determine whether its investment of judicial energy justifies retention of jurisdiction"); Meza v. Matrix Serv., No. CIV. 2:09-3106 WBS JFM, 2010 WL 366623, at *4 (E.D. Cal. Jan. 26, 2010) ("There is no prevailing reason for this court to maintain jurisdiction to preserve judicial economy.").

The convenience factor also weighs against exercising supplemental jurisdiction since the state court is located in close proximity to this federal court.  See Meza, 2010 WL 366623, at *4 (finding that convenience weighed against the exercise of supplemental jurisdiction where "the state and federal fora are located in Sacramento, only blocks from one another, making both equally convenience for the parties."). Further, although this case is scheduled for trial in August 31, 2010, an earlier filed case is scheduled for trial at the same time and that case will proceed to trial before this case is tried.  Therefore, it is unclear when this case may be tried in federal court.

Therefore, the pertinent factors do not weigh in favor of continued exercise of jurisdiction, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claim for interference with contract.  Therefore, that claim will be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

### V.   CONCLUSION

For the stated reasons, Defendants' request for sanctions is denied, and Defendants' motion for summary judgment on Plaintiff Perfino's federal equal protection claim is granted.  Further, Plaintiffs' remaining state law claim for interference with contract is dismissed without prejudice under 28 U.S.C. § 1367(c)(3).  This case shall be closed.

Dated:  July 2, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge